IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONNIE C. SELF and <br> CHRISTOPHER DALE DOWELL, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Case No. 3:11-cv-00582 |
| CITY OF LEBANON, TENNESSEE, <br> BILLY WEEKS, individually and in his <br> capacity as Commissioner of Public <br> Safety for the City of Lebanon, Tennessee, <br> and PHILLIP CRAIGHEAD, individually <br> and in his official capacity as Mayor of <br> the City of Lebanon, Tennessee, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | JUDGE HAYNES <br><br> JURY DEMAND |
| Defendants. | ) | |

**DEFENDANT BILLY WEEKS' REPLY TO PLAINTIFFS'
RESPONSE TO MOTION TO DISMISS**

Defendant Billy Weeks ("Defendant" or "Mr. Weeks"), by and through counsel, and by permission of the Court, files this *Reply* to the *Response* filed by Plaintiffs Donnie C. Self ("Plaintiff Self") and Christopher Dale Dowell ("Plaintiff Dowell") to Defendant Weeks' *Motion to Dismiss*. Plaintiffs' Response fails to address most of the deficiencies indentified in the *Motion to Dismiss*, and makes new allegations not contained in the Complaint.

**LEGAL STANDARD**

Plaintiffs cite a recent Tennessee Supreme Court case in an attempt to argue that their Complaint should be scrutinized under the Tennessee notice pleading standard rather than the federal plausibility standard established in *Twombly* and *Iqbal*. However, the Federal Rules of Civil Procedure govern all claims this litigation, including Tennessee state law claims. Fed. R.

Civ. P. 81(c); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Co.*, 415 U.S. 423, 438 (1974). The outcome would likely be the same under the Tennessee Rules, since Plaintiffs fail to allege facts sufficient to support most of their claims under either standard, but the Federal Rules apply.

## LAW AND ARGUMENT

1. **Plaintiff Self's First Amendment Claims**

In an attempt to revive his time-barred First Amendment claims relating to the 2008 mayoral race, Plaintiff Self advances a "continuing violation" argument. In so doing, Plaintiff Self attempts to somehow connect Defendant Weeks' alleged statements and actions during the 2008 mayoral campaign with an obviously unrelated incident of alleged reckless handling of a handgun in May of 2010 and Defendant Weeks' subsequently joking about the alleged gun incident some time thereafter. Plaintiff Self fails to allege any facts connecting these separate incidents in the Complaint, and even the *Response* to the *Motion to Dismiss* makes nothing more than a conclusory allegation that the two incidents (separated by years) constitute a continuing violation. This lawsuit was commenced approximately three years after the mayoral race.

A plaintiff cannot use an allegation of a separate, more recent incident to bootstrap in a claim that had expired years before the second incident even happened, and which on its face has nothing to do with the first event. Even the caselaw cited by Plaintiffs themselves establishes that for the continuing violation doctrine to apply, "The discriminatory conduct must be continuous or on-going." Plaintiffs' *Response* at pg. 6 (quoting *El-Zabet v. Nissan North America, Inc.*, 2005 U.S. Dist. LEXIS 33023, 24-25 (E.D. Tenn. Sept. 12, 2005). The Complaint did not allege that there was a pattern of discriminatory conduct extending from the 2008 campaign to the May 27, 2010 incident, nor did it allege facts that would support such a claim.

Plaintiff Self's First Amendment claims are time-barred and fail as a matter of law.

### 2. Plaintiff Dowell's First Amendment Claims

Plaintiffs' *Response* acknowledges well-established case law that permits municipalities to manage their own municipal employees and their speech, even when an employee speaks on matters that might otherwise be of public concern if discussed by a non-employee, private citizen. Plaintiff Dowell argues in the *Response* that when he, the Fire Chief, spoke on the local radio program about the fire department budget and fire truck acquisition, he was not acting in any way pursuant to his position as Fire Chief of the City of Lebanon. (Resp. p. 7.) This assertion flies in the face of reason and the facts alleged in the Complaint. As Fire Chief, the City's official messaging on matters involvement fire department business was part of his job. Plaintiff Dowell cannot claim, as he does in the *Response*, that he "merely gave his opinions in response to the questions posed by the program host" (Resp. p. 8.), as if it were just a coincidence that he happened to be the Fire Chief.

Moreover, Plaintiff Dowell still has not alleged facts to show that he experienced an adverse employment action as a result of his radio comments. Defendant Weeks has only alleged that Defendant Weeks told him he was "whining," which does not qualify as an adverse employment action. In the *Response* to the *Motion to Dismiss*, Plaintiff Dowell now claims there was a "pattern or habit of complaining about Plaintiff Dowell's comments on the program" (Resp. p. 8.), but no such thing is alleged in the Complaint. Even if it were, it wouldn't make this actionable. Taking his allegations at face value, nothing actually happened to him as a result of Plaintiff Weeks' displeasure with his comments in the radio interview. The alleged horseplay incident with the gun is clearly unrelated. Having failed to show that he experienced a negative employment action in response to his radio comments, he cannot establish a First Amendment

violation. Further, even if he had alleged some actual retaliation for the radio interview, that speech clearly falls within the legitimate management interest of his employer and supervisors, and cannot be the basis for a First Amendment claim. Because his radio interview clearly pertained to his duties as Fire Chief, it was fair game for a supervisor's criticism. Plaintiff Dowell's First Amendment claims should be dismissed as a matter of law.

3. **Plaintiffs Fourth Amendment Claims**

Plaintiffs' *Response* to Defendants Weeks' *Motion to Dismiss* their Fourth Amendment claims center around the word "horseplay," arguing that because that exact term wasn't used in the Complaint, they have alleged facts to show that they didn't think Defendant Weeks was joking.[1] This argument is inconsistent with the facts they allege in their Complaint, and does not refute Defendant Weeks' point that Plaintiffs were free to terminate the encounter, and in fact, did so when they wished to leave. (Compl. ¶ 32-43.) In their *Response* to the *Motion to Dismiss*, Plaintiffs point to the fact that they claim to have been "in fear for their lives and felt as if they were not free to leave by their own choice." (Resp. p. 10.). This allegation of their subjective perception does not state a claim for Fourth Amendment Seizure or for the related state law claim of false imprisonment, and moreover it is contrary to the actual facts they allege. A mere subjective belief alone does not create a seizure of the person or a false imprisonment. As more

---

[1] As required by Rule 12, Defendant Weeks has accepted as true all well-plead factual allegations contained in the Complaint for the purpose of his *Motion to Dismiss* and does not rely on documents outside of the Complaint in support of this motion. However, Plaintiffs' objection in their *Response* to the use of the word "horseplay," and their contention that they did not allege that it was horseplay, raises serious concerns. This objection seems to come very close to an assertion that the alleged incident was something other than horseplay. It is true that the word "horseplay" does not occur in the Complaint, but Plaintiffs' description of the events is capable of no other interpretation. Of greater concern, any attempt to assert in a motion response that the incident was something other than horseplay raises Rule 11 implications. Both Plaintiffs filed written complaints with the City about the gun incident, stating clearly that they knew Defendant Weeks' alleged actions were "non-violent" (Self) and "in a playful and joking manner" (Self) and "in a joking manner" (Dowell). Defendant Weeks does not file and rely on those documents, as to do so would convert this Rule 12 motion to a Rule 56 *Motion for Summary Judgment*. Moreover, it is not necessary to rely on these written statements for dismissal to be warranted. However, if, in their effort to defeat the *Motion to Dismiss*, Plaintiffs intend to assert to this Court that the incident was not horseplay, in light of their own written statements, Defendant Weeks hereby puts Plaintiffs on notice of his intention to seek Rule 11 remedies for the use of such an argument.

fully briefed in Defendant Weeks' *Memorandum in Support* of his *Motion to Dismiss*, for a Fourth Amendment Seizure to exist, the physical circumstances must exist that would lead a reasonable person to conclude that he is not free to leave, and Tennessee law of wrongful imprisonment requires that the plaintiff show that he was *actually detained* or restrained against his will (*Memorandum in Support*, pp. 8-9, 14-15). Notwithstanding Plaintiffs' conclusory statement of a subjective belief that they were not free to leave, the underlying facts that they allege contradict that statement of subjective mental state. The facts alleged not only provide no basis for an assertion that they could not leave, but demonstrates that they did leave.

Specifically, Plaintiffs do not allege that Defendant Weeks detained them for even an instant. Plaintiffs allege that Defendant Weeks approached them in their vehicle on foot while making a couple pretend "quick draw" motions, then placed his gun against Plaintiff Dowell's body armor, made joke about whether the body armor would work and laughed, at which point Plaintiffs drove away. They do not allege that he instructed them to stop or made any such statement. They do not allege that they remained in place any longer than they would have. Taking their own allegations as true, there was no detention, not even for an instant, nor any reason to believe that they were being detained. By their own allegations, when Defendant Weeks made the statement and laughed, they drove away.

Whether Defendant Weeks' alleged actions could have put Plaintiffs in reasonable fear of injury or death (if even from an accidental discharge) pertains to the claim of assault and battery, not to this claim of Fourth Amendment seizure or false imprisonment. To interpret Plaintiffs' allegations to mean that they had a reasonable belief that they were actually ordered to remain in place or Defendant Weeks would shoot them strains credulity and certainly does not fit within the plausibility pleading standard of *Twombly* and *Iqbal*. The lenient pleading standard of the Rules of Civil Procedure does not require a court to throw out all common sense in construing a

set of circumstances plead by a plaintiff. As stated in Defendant Weeks' *Memorandum in Support*, "[A] court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." *State v. Williams*, 185 S.W.2d 311, 316 (Tenn. 2006). In this case, not only was there no request to remain in place, and not only would the circumstances as plead not lead a reasonable person to believe he was not free to terminate the encounter, but in addition, Plaintiffs *did* terminate the encounter.

### 4. Plaintiffs have no basis for their Fourteenth Amendment claims

The *Response* merely repeats Plaintiffs' conclusory assertion that the Lebanon Personnel Rules and Regulations and the Police Department Firearms Policy granted them rights that were violated by Defendant Weeks. (Resp. p. 10-11.) Plaintiffs do not even attempt to explain how the existence of employee policies gives them a private cause of action against Defendant Weeks. Moreover, Plaintiffs have not and cannot allege facts supporting their claim that Defendant Weeks did anything to stop them from commencing or moving through the grievance process. Even if Defendant Weeks did violate certain of those policies by the acts alleged in the Complaint, and even if the City failed to discipline him, such a violation would not permit Plaintiffs to seek money damages from Defendant Weeks. The Fourteenth Amendment claims fail to state a claim upon which relief may granted.

### 5. Plaintiffs do not allege facts to support a claim for negligent infliction of emotional distress

Plaintiffs concede that a claim for negligent infliction of emotional distress must contain either (1) that the plaintiff suffered a physical manifestation of the psychological trauma or (2) that the plaintiff was seen by a professional regarding the psychological trauma. Other than their

conclusory statement that the psychological damage was "serious," they do not even allege these facts. Mere recitation of the elements is not enough. Defendant Weeks does not contend that Plaintiffs must bring forth their evidence at this stage, but they must at least allege sufficient non-conclusory facts to state a claim. Plaintiffs again cite the Tennessee Rules of Civil Procedure, which do not govern state law claims in federal court. Plaintiffs' claims for negligent infliction of emotional distress should be dismissed as a mater of law.

### 6. Conclusory statements are insufficient to support Plaintiffs claims for intentional infliction of emotional distress

Plaintiffs' *Response* renews their assertion that Defendant Weeks' alleged actions were outrageous. However, these conclusory statements are not enough to show that the alleged actions rose to such a level that they would be considered outrageous and not to be tolerated in civil society as that standard is established in the Tennessee case law.

Stating that our society does not tolerate (i.e., prohibits) certain conduct is not the same as saying that the conduct meets the much more rigorous standard for this cause of action. The mere fact that an act is legally prohibited (or even criminal) is insufficient to show that it rises to the level of outrageous conduct. If Plaintiffs' argument were true, virtually every crime or civil sex harassment claim would also constitute outrageous conduct. Instead, case law holds that many acts that our society has chosen to prohibit do not meet this standard. *See*, *e.g.*, *Weaver v. Pardue*, 2010 WL 4272687 at *2-3 (Tenn. Ct. App. Oct. 28, 2010) (holding that sexual battery of a patient by a physician did not constitute outrageous behavior); *McBee v. Greer*, 2010 WL 2290560 at *2-3 (Tenn. Ct. App. Jun 8, 2010) (holding that a violent attack on a process server did not provide grounds for a claim of intentional infliction of emotional distress/outrageous conduct); *Bellomy v. Autozone, Inc.*, 2009 WL 4059158 at *11 (Tenn. Ct. App. Nov. 24, 2009) (holding that claims of sexual discrimination did not rise to the level necessary to state a claim

for outrageous conduct).

To constitute outrageous conduct or intentional infliction of emotional distress, conduct must be far worse than dangerous or unacceptable; it must be so far beyond the bounds of civilized society as to utterly shock the conscience. In the *Memorandum in Support*, Defendant Weeks cites cases that illustrate just how severe the facts must be to constitute intentional infliction of emotional distress (e.g., showing a mother her dead baby in a jar). Plaintiff's allegations, even if taken as true, do not even come close to this standard.

### 7. Plaintiffs do not allege facts to support a claim for false imprisonment

For the reasons previously stated with regard to the Fourth Amendment seizure claim, this state law claim fails. Plaintiffs' claim to have had a subjective belief that they were not free to leave is not only insufficient to state a claim for this tort, but it is contrary to the surrounding facts they allege. Without alleging objective facts to support their allegations, Plaintiffs false imprisonment claims must fail.

### 8. The hate crime statute cited by Plaintiffs does not provide a private cause of action

Plaintiffs make an unsupported allegation that Defendant Weeks committed a hate crime, citing only to Paragraphs 126 through 131 of the Complaint. The facts alleged in the Complaint do not constitute a violation of the hate crime statute, T.C.A. § 39-17-309. Moreover, that statute does not provide a civil cause of action under which Plaintiffs may seek recovery of any damages.

### 9. Plaintiffs' defamation claims fail to state a claim and do not meet the Tennessee defamation pleading requirements

The *Response* rehashes the same allegations contained in the Complaint, namely, that

Defendant Weeks said he knew Plaintiff Self wasn't comfortable around him; that other police officers told Plaintiff Self that he should watch his back and that Defendant Weeks said derogatory things about Plaintiff Self; and that Defendant Weeks told some unidentified third parties that Plaintiff Self used his city cell phone for personal use, campaigned on city time and did not performed his assigned duties. (Resp. p. 15.) In addition to the fact that the allegations regarding statements made about Plaintiff Self's campaign activities presumably occurred in the 2008 campaign (and thus would be time barred, the Tennessee statute of limitations for spoken defamation being six months, T.C.A. § 28-3-103), even if timely these statements either do not constitute defamation, or have not been pled with specificity as required by *Handley v. May*, 588 S.W.2d 772 (Tenn. Ct. App. 1979). Plaintiffs do not allege the identity of the parties to whom the statements were published, or the date, manner and place of the communication, as required by Tennessee law. Even if they had been sufficiently pled, the only statements Plaintiffs can identify are either opinion statements or do not meet the definition of defamation (for example, laughing about the gun incident cannot constitute defamation). Plaintiffs have failed to sufficiently plead a claim of defamation as required under Tennessee law, and this claim should be dismissed.

**10. No contract exists between the parties to support a breach of contract claim**

Plaintiff's conclusory assertion that the City's personnel policies "are part of Defendant Weeks' contract with his employees" is patently ridiculous. They provide no support for this conclusory statement, either in the policy language, in an employment agreement, or in the law. The City of Lebanon Policies and Procedures do not constitute a contract, and they certainly do not form a contract between two city employees (between Defendant Weeks and either of Plaintiffs). Even if Plaintiffs' allegations that Defendant Weeks violated such policies were true, those alleged violations would not provide them a private cause of action.

**11. Plaintiffs fail to state a claim under the Public Employee Political Freedom Act**

The *Response* makes new allegations under the Tennessee Public Employee Political Freedom Act of 1980 (PEPFA), T.C.A. § 8-50-601 *et seq*, that were not contained in the Complaint. The Complaint contains no allegations that Defendant Weeks prohibited Plaintiffs in any way from communicating with any public official. To the contrary, Plaintiffs state that they met or spoke with Defendant Mayor Phillip Craighead on no less than six occasions, obviously unobstructed by Defendant Weeks or any other party. (Compl. ¶¶ 48-62.) Plaintiffs apparently seek to bring this claim solely as a way to shoehorn a claim for treble damages and attorneys fees into this lawsuit, and the only basis for this claim is that Plaintiff Self was bothered by Defendant Weeks' presence at the Police Department after his position of Safety Commissioner was eliminated. The allegations contained in the *Response* go outside the *Complaint*, but even if they had been plead and were accepted as true, they would not state a claim under PEPFA.

**12. Refusal to Exercise Supplemental Jurisdiction**

Plaintiffs contend that because Defendant Weeks joined in the removal of this case to federal court at a time when there were both federal and state claims, he should be barred from requesting that this Court not exercise supplemental jurisdiction once it is established that there are actually no viable federal claims. Plaintiffs provide no legal support for this position. Moreover, Plaintiffs' argument comes down to the position that Defendant Weeks has an all-or-nothing choice: either (1) consent to having a state court rule on the legal sufficiency of the federal claims instead of having a federal court do so, or (2) consent to having a federal court maintain jurisdiction over an exclusively state tort law claim once it is determined that there are no real federal claims.

Defendant Weeks is unaware of any legal support for such an all-or-nothing proposition. At the time the defendants sought removal, Plaintiffs claimed to bring substantial federal law claims. It is reasonable for Defendant Weeks to want a U.S. District Court to rule on the sufficiency of those federal claims. However, if this motion is granted with respect to the federal claims, this lawsuit will be simply a state tort claim, and there is nothing improper about Defendant Weeks contending that a pure state tort claim should be adjudicated in the state court.

At its essence, this lawsuit is a claim for assault and battery under Tennessee law, arising from an alleged act of handgun horseplay that Plaintiffs will no doubt contend was dangerous and reckless.[2] It has never really been anything more than that, though Plaintiffs have attempted to artificially inflate the value of the case by shoehorning the factual allegations into several federal Constitutional and Civil Rights causes of action. Having established that the federal claims should be dismissed, it is not improper for Defendant Weeks to assert that the real dispute – the tort claim of assault and battery – can be returned to state court for adjudication.

## **CONCLUSION**

All but Plaintiff Dowell's claim for assault should be dismissed for failure to state a claim. If the Court is inclined to dismiss all of Plaintiffs' federal claims and permit Plaintiffs to pursue their Tennessee state law claims, Defendant Weeks respectfully requests the Court to decline to exercise supplemental jurisdiction over those state law claims.

---

[2] In the interest of clarity, Defendant Weeks denies Plaintiffs' allegations regarding the handgun incident, but this is the only claim that even arguably has been stated sufficiently to survive a Rule 12 Motion to Dismiss.

Respectfully Submitted,

/s/ *Bryan E. Pieper*
BRYAN E. PIEPER, BPR #016852
PETER C. ROBISON, BPR #027498
**DRESCHER HELLER PIEPER MARTIN, P.C.**
1720 West End Avenue, Suite 300
Nashville, TN 37203
Phone: (615) 425-7111

*Attorneys for Defendant Billy Weeks*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2011, a copy of the foregoing has been delivered the Court's electronic filing system upon:

Richard M. Brooks, Esq.
130 Third Avenue, W
Carthage, TN 37030

*Attorney for Plaintiff Donnie C. Self*

G. Frank Lannom, Esq.
LANNOM & WILLIAMS
137 Public Square
Lebanon, TN 37087

*Attorney for Plaintiff Christopher Dale Dowell*

William N. Bates, Esq.
Jennifer Orr Locklin, Esq.
FARRAR & BATES
211 Seventh Avenue, North
Suite 500
Nashville, TN 37219

*Attorneys for the City of Lebanon, Tennessee*

Robert M. Burns, Esq.
HOWELL & FISHER
Court Square Building
300 James Robertson Parkway
Nashville, TN 37201-1107

*Attorneys for Mayor Phillip Craighead*

                                                          */s/ Bryan E. Pieper*_____
                                                          Bryan E. Pieper